%AO106 (Rev. 12/03)  Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT

_____MIDDLE_____   DISTRICT OF   _____ALABAMA_____

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

RanjitRajwaniCPA@gmail.com

### APPLICATION AND AFFIDAVIT
### FOR SEARCH WARRANT

Case Number: **2:16 mj/65 - GMB**

I, ____Louie E. Wilson, Jr._____ being duly sworn depose and say:

I am a(n)  __Special Agent with the Internal Revenue Service-Criminal Invest. Division__  and have reason to believe
                                                        Official Title

that  ☐ on the person of or  ☑ on the property or premises known as (name, description and/or location)
                                    See Attachment A

in the  _____Middle_____  District of  _____Alabama_____

there is now concealed a certain person or property, namely (describe the person or property to be seized)
                                    See Attachment B

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
    property that constitutes evidence and instrumentalities of the commission of a criminal offense

concerning a violation of Title  __18__  United States code, Section(s)  __1028(A)__
The facts to support a finding of probable cause are as follows:
    See attached Affidavit

Continued on the attached sheet and made a part hereof:      ☐  Yes      ☑ No

Signature of Affiant

Sworn to before me and subscribed in my presence,

**A␣g␣st 25, 20C**
Date

at   Montgomery                    Alabama
     City                          State

GRAY M. BORDEN, U.S. MAGISTRATE JUDGE
Name of Judge            Title of Judge

Signature of Judge

## AFFIDAVIT IN SUPPORT OF
## SEARCH WARRANT

I, Louie E. Wilson, Jr., being duly sworn, do hereby depose and say:

I.   Introduction

1. I am employed as a Special Agent with the United States Department of the Treasury, Internal Revenue Service – Criminal Investigation (IRS-CI) division, stationed in Montgomery, Alabama. I have been employed as a Special Agent since June of 1991. My duties and responsibilities as a Special Agent include the investigation of alleged criminal violations of Title 26, Title 18, and Title 31 of the United States Code.

2. I am a graduate of the Federal Law Enforcement Training Center, where I received extensive training on the different aspects of criminal investigations including interviewing, surveillance, search warrants, and undercover operations. I have received training relating to the enforcement of the United States tax laws, including the investigation of tax evasion schemes, money laundering, conspiracies to defraud the United States, and other criminal matters. I have also received training in the United States law relating to the judicial process, probable cause, the Fourth Amendment, searches, seizures, and the forfeiture of property, goods, and currency to the United States. As a Special Agent with IRS-CI, I have received training in financial investigative techniques and accounting. I have also attended investigative seminars taught

by various agencies, including agencies of the Department of Justice and the Department of Treasury.

3. The facts and information in this affidavit are based upon my personal knowledge as well as the observations of other law enforcement agents and officers involved in this investigation, records obtained via subpoena, IRS records provided by the Atlanta Scheme Development Center (ASDC), records provided by third parties and interviews of third party witnesses. This affidavit contains only the information necessary to support this application. It is not intended to include each and every fact and matter observed by me or known to the Government with regard to this investigation.

II.     Reason for this Affidavit

4. This affidavit is made in support of an application for a search warrant for information associated with certain e-mail accounts that are stored at premises, owned, maintained, controlled, or operated by Google, Inc., an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043. This affidavit is in support of an application for a search warrant for the following e-mail accounts:

DiannaRussoCPA@gmail.com

RanjitRajwaniCPA@gmail.com

Apbix23@gmail.com

The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Title 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, Inc. to disclose to the government records and other information in its possession pertaining to the subscribers or customers associated with the accounts, including the contents of communications.

III.    Statutory Authority

5. This Court has jurisdiction to issue the requested warrant because it is a court with "jurisdiction over the offense under investigation." 18 U.S.C. § 2711(3)(A)(i). As such, it is a "court of competent jurisdiction" authorized to issue the requested warrant.  18 U.S.C. § 2703(a).

6. The presence of a law enforcement officer is not required for the service or execution of this warrant.  18 U.S.C. § 2703(g).

IV.    Probable Cause

7. As part of my duties as a special agent I, along with several other law enforcement officers, have been investigating a data breach/stolen identity refund fraud (SIRF) case involving the potential theft of more than eleven thousand identities of public school system employees in both Alabama and Mississippi. More than 450 of those stolen identities were utilized to electronically file fraudulent 2015 federal income tax returns with the Internal

3

Revenue Service (IRS). Those fraudulent returns claimed refunds of approximately $2.2 million.

### The Investigation

8. This investigation was initiated in mid-March of 2016 when the Dothan (AL) Police Department began receiving numerous complaints from employees of the Dothan City School System. The complaints fell into two categories. First, many employees had attempted to electronically file their 2015 federal income tax returns, but were unable to do so because 2015 returns had already been filed utilizing their names and Social Security numbers (SSN). Second, several employees reported that they had received letters from the IRS providing with them with a transcript of their 2015 federal income tax returns. However, none of these employees had requested transcripts and in many instances, had not yet filed their 2015 federal income tax returns. Dothan PD subsequently provided the complaints to this affiant for further investigation.

9. On March 23, 2016, this affiant contacted the IRS Scheme Development Center (SDC) at the Atlanta Service Center to assist in the investigation. The SDC identified 143 false federal tax returns for tax year 2015 that were associated through either the IP address used to file the return, the device ID (a unique electronic number assigned to an electronic device) used to file the return, and/or the employer identified on the Form W-2 attached to the return. All 143 returns had W-2's from one of three employers – the Dothan City School System, the Alexander City (AL) Board of Education or the Escambia County

4

(AL) Board of Education. The SDC noted that each of the 143 returns had been filed using online software programs offered by either H&R Block or Taxhawk, Inc. The SDC research also indicated that 132 of the 143 returns directed the IRS to deposit the requested refund into a financial institution with a bank routing number of 044204370.

10. This affiant subsequently determined that bank routing number 044204370 is assigned to Ohio Valley Bank (OVB). On March 28, 2016, this affiant contacted OVB regarding the investigation. OVB advised that routing number 044204370 is dedicated to a particular bank customer, a company called Refund Advantage which processes tax refunds. OVB is simply the bank utilized by Refund Advantage to issue payments and maintains no records related to the tax returns which generate the refunds.

11. On March 28, 2016, this affiant contacted Refund Advantage. Refund Advantage confirmed that based on the bank routing number, they were the issuer of the refunds and that they maintain records related to the returns that generated the refunds. Refund Advantage advised that they only do business with professional tax preparation businesses that hold Electronic Filing Identification Numbers (EFIN) issued by the IRS. Refund Advantage advised that they do not process refunds for any online tax services such as Tax Hawk or H&R Block online. As this appeared to be in direct contradiction to the records provided by the SDC, this affiant inquired as to how Refund Advantage identified the particular EFIN holder which had filed a given return. Refund Advantage advised that the account numbers they issue for the IRS to

electronically deposit the refunds are constructed so that the first six digits are the EFIN number of the tax service that filed the return and the last nine digits represent the filer's SSN. Refund Advantage accepts the refund into this type of account, takes out any fees due and then electronically deposits the refund into an account designated by the taxpayer. A review of the account numbers in the information provided by the SDC identified four different EFINs – 882315, 871099, 362061 and 307115.

12. On March 28, 2016, this affiant contacted the SDC and requested research on the four EFINs identified above. On March 29, 2016, the SDC sent a response identifying the EFIN holders as follows:

882315 -    Houldsworth Russo & Co, PC

               8675 S. Eastern Avenue, Ste. A

               Las Vegas, NV 89123

871099 -    Ming & Associates

               6881 South Pine Drive

               Salt Lake City, UT 84121

362061 -    McCormick, Nedved & Associates

               2 N. LaSalle Street, Ste. 1250

               Chicago, IL 60602

307115 -    Accountax Aid, Inc.

               4676 Lakeview Avenue, Ste. 107

               Yorba Linda, CA 92886

The SDC response also provided spreadsheets listing all of the 2015 returns filed with the IRS via those four EFINs. None of the 132 returns identified by the SDC as directing the IRS to deposit the refunds into the accounts at Refund Advantage appeared on those spreadsheets. The information led this affiant to suspect that the four EFINs had been compromised (utilized without the knowledge or permission of the legitimate EFIN holder) and used to establish relationships with Refund Advantage. This suspicion was confirmed through a combination of records on file with the IRS, records obtained via subpoena from Refund Advantage and direct contact with one of the legitimate EFIN holders.

13. On March 30, 2016, an article appeared in the Alexander City Outlook which reported that more than 30 employees of the Alexander City (AL) Board of Education (ACBOE) had discovered that fraudulent 2015 federal income tax returns had been filed using their identities.

14. This affiant subsequently contacted ACBOE CFO Rhonda Blythe. Blythe advised that ACBOE had contacted the Alabama Supercomputer Authority, which provides internet access and other network services to all of the state's public K-12 schools. Blythe advised that the Supercomputer Authority had performed both internal and external security checks and confirmed that the ACBOE school system computers had not been hacked. Blythe further advised that she had learned that numerous employees of the Dothan City School System had been similarly victimized and that she had been looking for other connections between the two school systems. In doing so, Blythe determined that both the ACBOE and the Dothan City School System utilized the same

7

payroll provider, a company called Innovak, which is located in Spartanburg, South Carolina. Blythe further advised that she was aware that the Escambia County Board of Education also utilizes Innovak, as do other school systems across the Southeast. Blythe advised that she had already contacted Innovak about the ongoing situation.

15. This affiant then contacted Innovak and spoke with CEO David Watson. Watson confirmed that Innovak had been contacted by Rhonda Blythe and that they had initiated an investigation. Watson had discovered that the accounts of many of the ACBOE victims provided to him by Blythe had been improperly accessed within the previous seven days (this was as far back as records were maintained on the Innovak server). Watson advised that the perpetrator(s) was using valid login/user ID information to access the accounts. However, in researching the IP addresses which had been utilized to access the accounts, Watson had discovered that the IP addresses were assigned in Nigeria. Watson did not know how the perpetrator(s) had gained access to the individualized logins/passwords needed to access the system. Innovak eventually determined that eleven of the school districts they handle (three in Alabama and eight in Mississippi) had been affected by the data breach, but was unable to provide the exact number of accounts affected as they were limited in their research by the seven day history on their server. According to Watson, as far as they can determine, only payroll information was improperly accessed.

16. Based upon the information obtained from Innovak, this affiant requested that the SDC pull records for all 2015 returns that included Forms W-2 from any of

8

the eleven affected school districts and make an effort to determine how many were fraudulent returns filed as a result of the data breach. The SDC located a total of 11,096 returns containing W-2's from the affected school districts. To date, the SDC has confirmed that more than 450 of those returns are fraudulent and has submitted hundreds of others for further research. Of the 450 plus returns identified as fraudulent, all were filed using online tax software (primarily TaxHawk, H&R Block Online or Drake Enterprises). Those 450 plus returns claim refunds of more than $2.2 million and direct the IRS to electronically deposit those refunds into hundreds of different banks accounts (including many accounts maintained by Refund Advantage).

17. Investigation determined that virtually all of the IP addresses that had been captured by the IRS when the 450 plus fraudulent returns were filed had in fact been spoofed and were of no investigative value. The exceptions were three returns that had been filed through Drake Enterprises that listed the following IP addresses - 192.230.48.165, 192.230.48.226 and 192.230.49.117. Those three IP addresses are registered to a British company called Privax which does business under the name HideMyAss.com.

18. This affiant obtained records from Privax which showed that all three IP addresses were linked to a single user. The user account was registered with Privax on June 21, 2015 with the username provided as Demola1 and an email address of Hand money@yahoo.ie (this affiant has learned that the .ie extension on the email address indicates that the records are maintained on servers located in Ireland). The Privax response also provided two names and

9

email addresses which were utilized to make payments on the account using WebMoney. Those names (email addresses) are Abiola Paul (Apbix23@gmail.com) and Sarah Williams (willisarahlove11@yahoo.com).

19. On June 1, 2016, this affiant received a subpoena response from Refund Advantage which included the information in the fraudulent online applications used to set up the Refund Advantage accounts associated with compromised EFINs 882315, 871099, 362061 and 307155. Each of the applications included accurate information (primary contact, physical address, EFIN owner's SSN and date of birth, etc.) for the legitimate EFIN holder with several notable exceptions – the email address and the shipping address. The email addresses and shipping addresses provided in the fraudulent applications were as follows:

882315 – DIANNARUSSOCPA@gmail.com

200 S. Virginia Street

Reno, NV 89501

871099 - ROYHONG@outlook.com

222 S. Main Street, 5th Floor

Salt Lake City, UT 84101

362061 - MICHAEL32MCCORMICK@outlook.com

6079 Bunker Hill Road

New Berlin, IL 62670

307115 – RANJITRAJWANICPA@gmail.com

3324 Mountain Avenue

San Bernardino, CA 92404

The records received from Refund Advantage further revealed that blank check stock had been shipped to the addresses associated with EFIN 882315 and EFIN 871099. This occurred because Refund Advantage had been unable to direct deposit some of the refunds into the bank accounts that were originally designated by the individual(s) utilizing the compromised EFINs. This occurs for various reasons including an improper routing number, an improper account number or a name mismatch between the name on the account and the intended recipient of the refund. In such situations, Refund Advantage instructs their client (the EFIN holder) to issue the taxpayer a paper check provided by Refund Advantage and filled out on a printer in the EFIN holder's office. Believing that they were dealing with a legitimate EFIN holder, Refund Advantage shipped such checks to the above listed addresses in Reno and Salt Lake City (the software program utilized by Refund Advantage automatically sends an email notification to the email account on the EFIN holder's application when the checks are shipped). Twenty eight of those checks were ultimately deposited into the Comerica Bank account of a registered money services business in Carrollton, Texas known as Broadway Texaco. Eighteen of the twenty-eight were in the names of Dothan City School System employees.

20. Further investigation of two of the addresses listed above revealed that the addresses – 200 S. Virginia Street, Reno NV 89501 and 222 S. Main Street, 5th Floor, Salt Lake City, UT 84101 – are not in any way related to the actual EFIN

11

Affidavit for Search Warrant - Google

holders (Houldsworth Russo & Co., P.C. and Ming & Associates). Instead they are the locations of Regus temporary office centers. Regus is a worldwide provider of temporary office space and office related services.

21. This affiant obtained records from Regus which revealed that an account in the name of Holdsworth Russo & Partners had been established at the Regus location in Reno on October 16, 2015 and an account in the name of Roy, Inc. had been established at the Regus location in Salt Lake City on September 17, 2015. Both accounts were set up to accept mail/packages and forward said items to another address provided by the client. Both accounts had been established online by an individual named Kevin Williams. Williams had provided the same forwarding address for each account – 3921 Alberta Street, St. Louis, MO 63116. Williams utilized the same email address in establishing both accounts – kevrnr@yahoo.com. The response included copies of emails between Regus and Williams in which Williams utilized the kevrnr@yahoo.com email address. Records further confirmed that each of these accounts had received FedEx shipments from Refund Advantage that had subsequently been forwarded to the address in St. Louis.

22. Investigation further identified Kevin Williams as Kevin Kunlay Williams, a 55 year old, black male from Nigeria. Property records identify Williams as the owner of the house at 3921 Alberta Street in St, Louis, Missouri.

23. Based on my training and experience, I am aware that individuals involved in stolen identity refund fraud schemes like the one outlined in this affidavit often transmit means of identification (names, dates of birth, SSNs, etc.)

electronically, including via e-mail. There have been three different Google, Inc. e-mail accounts identified in this investigation and it is likely that those e-mail accounts may have been utilized to send or receive means of identification or other information related to this scheme. Those three mail accounts include DiannaRussoCPA@gmail.com and RanjitRajwaniCPA@gmail.com which were utilized to establish the fraudulent accounts with Refund Advantage and Apbix23@gmail.com which was utilized to make a payment on the Privax account that was associated with the electronic filing of three of the fraudulent returns.

24. Based on my training and experience, and on information provided by Google, Inc., I know that Google, Inc. provides a variety of online services, including electronic mail (email) access to the general public. Subscribers obtain an account by registering with Google, Inc. During the registration process, Google, Inc. asks subscribers to provide basic personal information. Therefore, the computers of Google, Inc. are likely to contain stored electronic communications (including retrieved and un-retrieved email for Google, Inc. subscribers) and information concerning subscribers and their use of Google, Inc. services, such as account access information, email transaction information, and account application information.

25. In general, email that is sent to a Google, Inc. subscriber is stored in the subscriber's "mailbox" on Google, Inc. servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Google, Inc. servers indefinitely. Likewise, when the subscriber sends an

email, it is initiated at the user's computer, transferred via the internet to Google, Inc.'s servers, and then transmitted to its end destination. If the user so desires, they can opt to save all sent emails from their Google, Inc. email account, in which case these emails could be stored in the user's email account until deleted by the user.

26. A Google, Inc. subscriber can also store files, including emails, address books, contact or buddy lists, pictures, and other files on servers maintained and/or owned by Google, Inc. Subscribers to Google, Inc. might not store on their home computers copies of the emails stored in their Google, Inc. account. This is particularly true when they access their Google, Inc. account through a public terminal, or if they do not wish to maintain particular emails or files in their residence.

27. In general, email providers like Google, Inc. ask each of their subscribers to provide certain personal identifying information when registering for an email account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and for paying subscribers, means and source of payment (including any credit or bank account number).

28. Email providers including Google, Inc. typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or

closed), the methods used to connect to the account (such as logging into the
account via Google, Inc.'s website), and other log files that reflect usage of the
account. In addition, email providers often have records of the Internet Protocol
("IP") address used to register the account and the IP addresses associated with
particular logins to the account. Because every device that connects to the
Internet must use an IP address, IP address information can help to identify
which computers or other devices were used to access the email account.

29. In some cases, email account users will communicate directly with an email
service provider about issues relating to the account, such as technical
problems, billing inquiries, or complaints from users. Email providers typically
retain records about such communications, including records of contacts
between the user and the provider's support services, as well as records of any
actions taken by the provider or user as a result of the communications.

30. In my training and experience, evidence of who was using an email account
may be found in address books, contact or buddy lists, email in the account, and
attachments to emails, including pictures, other digital images, and files.


V.     Information To Be Searched And Things To Be Seized

31. I anticipate executing this warrant under the Electronic Communications Privacy
Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by
using the warrant to require Google, Inc. to disclose to the government copies of
the records and other information (including the content of communications)
particularly described in Attachment A and Section 1 of Attachment B. Upon

receipt of the information described in Section 1 of Attachment B, government-authorized persons will review that information to locate the items described in Section 2 of Attachment B.

VI.    Conclusion

32. Based on the foregoing, I request that the Court issue the proposed search warrant. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

33. I further request that the warrant application, the search warrant and this Affidavit, as they reveal an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against flight, and better ensure the safety of agents and others, except that working copies may be made available to the United States Attorney's Office, the Department of Justice, Tax Division, Southern Criminal Enforcement Section, the Internal Revenue Service, any other law enforcement agency designated by the United States Attorney's Office or the Department of Justice, Tax Division, and Google, Inc..

34. I further request that, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of thirty (30) days after the termination of the execution of the warrant, and that such notice may be further delayed upon motion of the government and for good cause shown. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in

18 U.S.C. § 2705.  Providing immediate notice to the user of the account would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, intimidate potential witnesses, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1).


Louis E. Wilson, Jr.
Special Agent, IRS-CI

Sworn to before me and subscribed in my presence this 25 day of August, 2016.


Gray M. Borden
United States Magistrate Judge

17

## ATTACHMENT A

This warrant applies to information associated with the account known as RanjitRajwaniCPA@gmail.com that is stored at premises owned, maintained, controlled or operated by Google, Inc., an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## ATTACHMENT B

### Particular Items to be Seized

**1.      Information to be disclosed by Google, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, Inc., including any emails, records, files, logs, or information that has been deleted but is still available to Google, Inc., or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google, Inc. is required to disclose the following information to the government from the accounts listed in Attachment A:

   a.      The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

   b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

   c.      The types of service utilized;

   d.      All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

   e.      All records pertaining to communications between Google, Inc. and any person regarding the account, including contacts with support services and records of actions taken.

**2.      Information to be seized by the Government**

All information described above in Section 1 that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 1028A; Title 18, United States Code, Section 1030; and Title 18, United States Code, Section 1343 since January 1, 2012, including information pertaining to:

a.      Records and communications regarding the transmission of personally identifiable information, tax returns, prepaid debit cards, the proceeds of the transfer or use of personally identifiable information, and a conspiracy to file false tax returns using stolen identities;

b.      Records and communications regarding any property derived from the proceeds of the conspiracy; and

c.      Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS
PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of
perjury under the laws of the United States of America pursuant to 28 U.S.C. §
1746, that the information contained in this declaration is true and correct. I am
employed by Google, Inc., and my official title is
_____. I am a custodian of records for Google, Inc.
I state that each of the records attached hereto is the original record or a true
duplicate of the original record in the custody of Google, Inc., and that I am the
custodian of the attached records consisting of _____
(pages/CDs/kilobytes). I further state that:

     a.    all records attached to this certificate were made at or near the time
of the occurrence of the matter set forth, by, or from information transmitted by, a
person with knowledge of those matters;

     b.    such records were kept in the ordinary course of a regularly
conducted business activity of Google, Inc.., and;

     c.    such records were made by Google, Inc. as a regular practice.

     I further state that this certification is intended to satisfy Rule 902(11) of
the Federal Rules of Evidence.


_____     _____

Date          Signature